# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Justin Mueller, *formerly known as Justin Oman*; Larry Black; Craig Bolte; Joshua Mertz; and Thomas Kittrell, | Case No. 16-cv-277 (JNE/TNL) |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| Chad Mesojedec, *Rehab Therapies Director*; Nicholas Lammi, *Rehab Therapist*; Christine Sell; *Rehab Therapist*; Steve Sayovitz, *Security Program Manager*; Sandra Bryant, *Volunteer Services Coordinator*; Mandy Torgerson, *Special Services Supervisor*; Kevin Moser, *Program Facility Director*; and Peter Puffer, *Clinical Site Director*, | |
| Defendants. | |

Justin Mueller, 1111 Highway 73, Moose Lake, MN 55767 (*pro se* Plaintiff);

Larry Black, 1111 Highway 73, Moose Lake, MN 55767 (*pro se* Plaintiff);

Craig Bolte, 1111 Highway 73, Moose Lake, MN 55767 (*pro se* Plaintiff);

Joshua Mertz, 1111 Highway 73, Moose Lake, MN 55767 (*pro se* Plaintiff);

Thomas Kittrell, 100 Freeman Drive, St. Peter, MN 56082 (*pro se* Plaintiff); and

Aaron Winter, Assistant Attorney General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101-2128 (for Defendants).

This matter comes before the Court, United States Magistrate Judge Tony N.

Leung, on Defendants' Motion to Dismiss, (ECF No. 16). This motion has been referred

to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.   Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion be **GRANTED**, and this matter be **DISMISSED**.

## I.   BACKGROUND

Plaintiffs are each civilly committed to the Minnesota Sex Offender Program ("MSOP") and in the care and custody of the Minnesota Department of Human Services for an indefinite period of time.   (ECF No. 1 ¶¶ 8-12.)   Each is a practitioner of the Asatru faith.   (*Id.*)   The Asatru faith is "an earth-based religion which falls under the umbrella of Paganism."   (*Id.* ¶ 30.)

Defendants include a variety of officials employed at or otherwise connected to the MSOP facility at Moose Lake, Minnesota.   (*Id.* ¶¶ 13-20.)   Defendant Chad Mesojedec is the Rehab Therapies Director at the Moose Lake facility whose responsibilities include "supervising the religious resource areas, education and recreation within the [Moose Lake] facility."   (*Id.* ¶ 13.)   Defendants Nicholas Lammi and Christine Sell are Rehab Therapists at the Moose Lake facility whose responsibilities include "supervising religious activities, library, and educational activities[.]"   (*Id.* ¶¶ 14-15.)   Defendant Steve Sayovitz is the Security Program Manager at the Moose Lake facility whose duties include "supervising the security staff, [and] attend[ing] meeting[s] related to religious practices to discuss if things would be safe for the facility[.]"   (*Id.* ¶ 16.)   Defendant Sandra Bryant is the Volunteer Services Coordinator at the Moose Lake

facility whose duties include "coordinating volunteers for spiritual groups, assisting groups with materials they may need to practice their religion, [and] attend[ing] spiritual practices committee meetings[.]" (*Id.* ¶ 17.)  For each of these Defendants, Plaintiffs allege that each, in his or her individual and official capacities, "implemented, retained and carried out the violations which Plaintiff[s] ha[ve] alleged in this complaint, therefore, violating the constitutional, statutory, and common law rights of the [P]laintiff[s]." (*Id.* ¶¶ 13-17.)

Plaintiffs' Complaint includes three other Defendants.  Defendant Mandy Torgerson is the Special Services Supervisor at the Moose Lake facility whose duties include "supervising the property, mailroom, and canteen staff." (*Id.* ¶ 18.)  Plaintiffs allege that Torgerson "is directly involved with approving thing[s] at the AIC (Allowable Items Committee) and has denied items for entrance to the facility that are religious related." (*Id.*)  Defendant Kevin Moser is the Facility Program Director[1] at the Moose Lake facility whose duties include "the day to day operations of the facility, supervising staff, and responding to grievances within the chain of command for religious complaints." (*Id.* ¶ 19.)  Defendant Peter Puffer is the Facility Clinical Director[2] at the Moose Lake facility whose duties include "supervising Clinical staff and providing insight to the institution regarding therapeutic activities[,]" and who is "also on the chain of command for religious complaints." (*Id.* ¶ 20.)

---

[1] Mr. Moser is referred to as the "Program Facility Director" in the caption of the Complaint.

[2] Mr. Puffer is referred to as the "Clinical Site Director" in the caption of the Complaint.

Plaintiffs contend that Defendants implemented policies and/or refused accommodations that denied Plaintiffs the right to practice their religion in an appropriate manner, deprived Plaintiffs of the right to practice their religious beliefs freely, and denied Plaintiffs the right to be free from inhumane treatment. (*Id.* ¶ 3.) First, Plaintiffs claim that the Asatru group at the Moose Lake facility has been denied the opportunity to have their own dedicated space for worship and instead must share an area with other groups. (*Id.* ¶ 32.) Sharing of worship space requires the Asatru group to "perform rituals to purify the land before they can use it." (*Id.*) Plaintiffs further allege that sharing space will create "unwanted interactions" between faiths and the potential for "confusion and loss of focus" for Asatru worshipers. (*Id.*) Plaintiffs additionally note that other groups, specifically the Native American group, have been afforded their own space that other faith groups are not allowed to utilize. (*Id.*)

Second, Plaintiffs allege that the Asatru group is not able to have "appropriate amenities" needed to use the outdoor area. (*Id.* ¶ 33.) These amenities would be "permanent to the area[.]" (*Id.*) Plaintiffs specifically identify a requested barrier that would be "put around the area, due to the high traffic in the area that the [Asatru] group utilizes." (*Id.* ¶ 34.) Plaintiffs claim that the reason for the barrier "is to shut off the outside from rituals being performed" so that things that are not conducive to Asatru religious beliefs are not seen by practitioners and "those who may have an offense to the things being done within the ritual" would not have to see what is happening. (*Id.*) Plaintiffs claim that they have been told that this barrier is a security concern and therefore they are not able to obtain the barrier they requested. (*Id.*) Plaintiffs also claim

that they have been denied a fire grate in their outdoor worship area, which is needed to ensure that a fire can be made even after a substantial rain.  (*Id.* ¶ 43.)

Third, Plaintiffs allege that they have been denied "essential tools" that are "necessary to the religion for practice of rituals such as a hollowing hammer, a sword (including a paper sword for representation), [a] bone horn, a stone altar, [and] incense." (*Id.* ¶ 35.)

Fourth, Plaintiffs allege that they are not allowed to order food from outside food vendors for Blot rituals, such as meats, "including goat, horse, ram, goose, pork, rabbit, fish, oxen or cattle, and stag or venison."  (*Id.* ¶ 36.)  Plaintiffs claim that they also need additional foods for their ritual, "including baked goods, apples, nuts, potatoes, cabbage, carrots, mushrooms, onions, eggs, and milk."  (*Id.*)  Plaintiffs additionally allege that they are not allowed an appropriate space to cook the foods that are used to make the meals used at the Blot rituals.  (*Id.* ¶ 38.)

Fifth, Plaintiffs allege that they have been denied allowance to practice their religion fully.  Plaintiffs allege that they are not allowed to celebrate all 23 religious holidays, 19 of which contain feast meals.  (*Id.* ¶ 37.)  Plaintiffs further allege that they are unable to practice their religion to the fullest due to restrictions on celebrating religious days, earth sacrifices, milestones, birthdays, and other obligations.  (*Id.* ¶ 41.) Additionally, Plaintiffs allege that their ritual time was reduced from 3 hours to 2 hours due to staff convenience and that they are not allowed to perform any rituals outside after dusk.  (*Id.* ¶ 42.)

Sixth, Plaintiffs allege that the accommodations they are afforded at the Moose Lake facility are less than at other MSOP facilities. (*Id.* ¶ 40.) Specifically, Plaintiffs allege that at the St. Peter, Minnesota facility, the Asatru group is allowed to access their outside area whenever they choose, whereas at Moose Lake, the outside area can only be accessed when there is an activity in the area. (*Id.* ¶ 40.) Additionally, Plaintiffs allege that the St. Peter Asatru group has an area to cook their food for each Blot, while the Moose Lake group does not have such an area. (*Id.*)

Seventh, Plaintiffs claim that Defendants made "false reports about [the] Asatru group extorting members of [the] group for monies[,]" and continued to make those reports "even after there was an investigation done" which proved there was no validity to the accusations in the reports. (*Id.* ¶ 39.)

Plaintiffs pursue claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of their First and Fourteenth Amendment rights and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, for alleged unjustified burdens placed on Plaintiffs' religious exercise. Plaintiffs seek declaratory, injunctive, and monetary relief against all of the Defendants. Plaintiffs seek relief against Defendants in Defendants' individual and official capacities.

## II.   LEGAL STANDARD

Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Furthermore, the

court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783 F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the

complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).   Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)).   Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

## III.    DEFENDANT' MOTION TO DISMISS

### A. Sovereign Immunity

Plaintiffs' Complaint specifically mentions that they are suing the Defendants in their individual and official capacities.  (ECF No. 1, at 1.)  The Eighth Circuit has held that "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citations omitted); *see also Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).  "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1119–20 (D. Minn. 2008) ("If no capacity is stated, the claim is deemed to be against the person in an official

capacity, which in turn means that the suit is one against the employing municipality.")
(citations omitted).   Because Plaintiffs' claims are construed as against the State of
Minnesota, Plaintiffs' official-capacity claims implicate the State of Minnesota's
Eleventh Amendment sovereign immunity from suit for damages.  *Edelman v. Jordan*,
415 U.S. 651, 662-63 (1974).

"The Eleventh Amendment immunizes an unconsenting State from damage
actions brought in federal court, except when Congress has abrogated that immunity for a
particular federal cause of action."  *Hadley v. North Arkansas Community Technical
College*, 76 F.3d 1437, 1438 (8th Cir. 1996) *cert denied*, 519 U.S. 1148 (1997).  "To
waive sovereign immunity, a state must make a clear, unequivocal statement that it
wishes to do so."  *Faibisch v. University of Minnesota*, 304 F.3d 797, 800 (8th Cir. 2002)
(citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238-40 (1985)).  Plaintiffs
present claims both under Section 1983 and under RLUIPA.  However, neither statute
waives or otherwise abrogates the State's sovereign immunity.  *See* Minn. Stat. § 1.05
(waiving immunity only for certain types of claims not presented here); *Sossamon v.
Texas*, 563 U.S. 277, 293 (2011) ("in accepting federal funding, [States] do not consent to
waive their sovereign immunity to private suits for money damages under RLUIPA[.]");
*Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009) (official capacity claims for
damages not available under RLUIPA); *Murphy v. State of Arkansas*, 127 F.3d 750, 754
(8th Cir. 1997) (concluding that Section 1983 claims for damages against individual
defendants in their official capacities are barred by the Eleventh Amendment).

Therefore, the Court recommends that the Plaintiffs' official-capacity claims for damages against Defendants be dismissed.

Plaintiffs also seek injunctive relief from Defendants.  Unlike claims for monetary relief, claims for declaratory and injunctive relief are not barred by the Eleventh Amendment.  42 U.S.C. 2000cc-2 ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (concluding that a Section 1983 claim against state officials in their official capacity for injunctive relief is cognizable because "official-capacity actions for prospective relief are not treated as actions against the state") (citations omitted).  Therefore, the Eleventh Amendment does not shield Defendants from Plaintiffs' official-capacity claims for injunctive and declarative relief.

### B.  Individual Capacity Suits.

Plaintiffs also seek monetary damages against Defendants in their individual capacities.  Defendants argue that RULIPA does not authorize a claim against the Defendants in their individual capacities.  (ECF No. 18, at 12-13.)  Relevant here, RLUIPA applies in any case in which "the substantial burden is imposed in a program or activity that received Federal financial assistance[.]"  42 U.S.C. § 2000cc-1; *Kilgore v. King*, No. CIV. 13-634 JRT/FLN, 2014 WL 4231540, at *6 (D. Minn. Aug. 26, 2014) ("RLUIPA only permits a cause of action against parties that receive federal funding."). Here, Plaintiffs do not allege that any of the individual Defendants receives federal funding.  Therefore, Plaintiffs cannot sustain a RLUIPA claim against the Defendants in

their individual capacities. *See Kilgore*, 2014 WL 4231540, at *6; *see also Sharp v. Johnson*, 669 F.3d 144, 153–55 (3d Cir. 2012); *Stewart v. Beach*, 701 F.3d 1322, 1333–1335 (10th Cir. 2012); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1271–75 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 131 S.Ct. 1651 (2011); *Jihad v. Fabian*, 09–CV–1604 (SRN/LIB), 2011 WL 1641885, at *8 (D. Minn. Feb. 17, 2011).[3] However, there is not a similar doctrine preventing individual-capacity claims under Section 1983.

### C. Free Exercise Claims

Because Plaintiffs are permitted to raise official-capacity claims for declaratory and injunctive relief claims under RLUIPA and Section 1983, and individual-capacity claims under Section 1983, the Court next turns to the merits of Plaintiffs' claims. Plaintiffs primarily raise claims challenging alleged burdens on their free exercise of religion. While these claims are potentially actionable under Section 1983, Plaintiffs also raise statutory claims under RLUIPA. "By enacting RLUIPA, Congress established a

---

[3] Defendants also contend that the individual capacity suits should be dismissed because the individual Defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (internal quotations omitted). Courts consider qualified immunity claims in two steps: (1) does the plaintiff allege or show a violation of a constitutional right; and (2) was the right allegedly violated clearly established at the time of the alleged misconduct. *See id.* at 232. As discussed in Sections III.C and III.D, *infra*, the Court concludes that Plaintiffs have not pled facts establishing a violation of a constitutional right. On this basis, Defendants are additionally entitled to qualified immunity against the individual-capacity claims.

statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Dep't. of Corrections*, 372 F.3d 979, 986 (8th Cir. 2004) *cert. denied*, 543 U.S. 991 (2004). If Plaintiffs fail to state a claim under RLUIPA, their claim would necessarily fail to state a claim under the First Amendment. *See Gladson v. Iowa Dep't. of Corrections*, 551 F.3d 825, 831 (8th Cir. 2009); *Jihad*, 2011 WL 1641885, at *8. Thus, the Court will first address Plaintiffs' claims under the framework of RLUIPA.

Under RLUIPA, for a government to "impose a substantial burden on the religious exercise of a person residing in or confined to an institution[,]" the government must demonstrate that the imposition of the burden on the person "is in furtherance of a compelling governmental interest" and the burden "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). In order to substantially burden an exercise of religion

> a governmental policy or action must significantly inhibit or constrain religious conduct or religious expression; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion

*Van Wyhe*, 581 F.3d at 656 (citations and quotations omitted). Furthermore, policies that put confined persons to the choice of adhering to their religious beliefs or facing serious disciplinary action substantially burden religious exercise. *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015). RLUIPA protection is not contingent on religious practices being compelled

by or central to a person's belief system and RLUIPA analysis may not inquire into whether a practice is central to a prisoner's religion. *Van Wyhe*, 581 F.3d at 656. Under both RLUIPA and First Amendment analysis, Plaintiffs must show that a state practice imposes a "substantial burden" on the exercise of their religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813-15 (8th Cir. 2008).

Defendants argue that Plaintiffs have not alleged facts plausibly establishing that they have experienced a substantial burden on their religious exercise. First, Defendants challenge Plaintiffs' allegations related to outdoor rituals. (ECF No. 18, at 16-17). Plaintiffs allege that they have been denied a dedicated space for worship and must therefore share the area with other groups. (ECF No. 1 ¶ 32.) Plaintiffs allege that the Asatru group must perform rituals to purify the land before they can use it. (*Id.*) These allegations are insufficient to establish a substantial burden on Plaintiffs' religious exercise. Plaintiffs have not alleged details about how they use the outdoor space, the time needed for their religious exercise, and how, if at all, the necessity of purification limits or curtails their religious exercise. Thus, Plaintiffs do not allege facts showing that sharing space "significantly inhibits[s] or contrain[s]" their religious conduct or "meaningfully curtail[s]" their ability to express adherence to their faith. At most, based on Plaintiffs' allegations, sharing space presents an inconvenience to the Asatru group, which is insufficient to establish a substantial burden. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (noting that at minimum, the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government policy is more than an inconvenience to religious exercise).

13

Plaintiffs also allege that the Asatru group does not have "appropriate amenities needed to use the outside area" and that they requested, but were denied, a barrier to be built around the area. (ECF No. 1 ¶¶ 33-34.) Plaintiffs have not alleged how either the lack of "amenities" or lack of barrier impact their religious practice. Plaintiffs claim that the reason for the barrier is "to shut off the outside from rituals being performed so that things that are not conducive to religious beliefs are not having to be seen and so that those who may have an offense to the things being done within the ritual would not have to partake in seeing things either." (*Id.* ¶ 34.) Plaintiffs, however, do not claim that the diminished privacy resulting from the lack of barrier in any way burdens their exercise of religion. Defendants are correct that Plaintiffs have not shown a substantial burden on their religious exercise with respect to the policies governing the outdoor rituals.

Additionally, Plaintiffs allege that ritual time has been reduced from three hours to two hours due to staff convenience and that rituals are not permitted to be performed outdoors after dusk. (*Id.* ¶ 42.) But, Plaintiffs provide no detail about how those limitations burden their religious exercise. For example, the Court has no information about how long rituals take, whether and how two hours are insufficient, or whether Asatru adherents must perform rituals outdoors after dusk. Without that or similar information, Plaintiffs have not alleged a RLUIPA violation.

Second, Defendants challenge Plaintiffs' allegations concerning food procurement and preparation. (ECF No. 18, at 17.) Plaintiffs make two contentions: (1) that Plaintiffs are denied access to an outside food vendor to order "proper" food for their Blot rituals; and (2) that the Asatru group does not have an "appropriate space" to cook the foods that

are used in the Blot rituals.  (EFC No. 1 ¶36 and ¶ 38.)  Plaintiffs, however, do not explain in any manner the significance of the food they are unable to order, how the cooking space is inappropriate, or how the inability to order certain foods or the denial of an "appropriate space" to cook substantially burdens their religious exercise.  Plaintiffs have not shown what food is required for the Blot rituals, whether all of the food listed in the Complaint is required, or how the food allegedly denied to Plaintiffs is important to the rituals at issue.  These allegations do not plausibly establish a substantial burden on Plaintiffs' religious exercise.

Third, Defendants challenge Plaintiffs' allegations concerning holiday celebrations. (ECF No. 18, at 17-18.)  Plaintiffs allege that there are 23 Asatru holidays, 19 of which contain feast meals.  (ECF No. 1 ¶ 37.)  Plaintiffs do not allege that they are prevented from celebrating those holidays, but they do allege that they are being "denied the ability to practice religion to the fullest" on all "religious days, earth sacrifices, milestones, birthdays, [and] other obligations[.]"  (*Id.* ¶ 41.)  Again, Plaintiffs do not explain how their celebrations are constrained.  Without more, Plaintiffs have not shown how their religious exercise has been constrained or how their expression of adherence to their faith has been meaningfully curtailed.  *See Van Wyhe*, 581 F.3d at 656. Thus, Plaintiffs have not pled facts establishing that they face a substantial burden to their celebration of religious holidays.

Fourth, Defendants challenge Plaintiffs' allegations concerning allegedly false reports made about the Asatru group.  (ECF No. 18, at 18.)  Plaintiffs allege that "false reports" were made about the Asatru group "extorting members" of the group for money

and that Defendants continued to make those reports even after an investigation showed that those accusations lacked validity. (ECF No. 1 ¶ 39.) Plaintiffs, however, do not contend that those reports posed a substantial burden on Plaintiffs' religious exercise. Therefore, these allegations do not support at RLUIPA claim.

Fifth, Defendants challenge Plaintiffs' allegations concerning the fire pit the Asatru group uses at the Moose Lake facility. (ECF No. 18, at 19.) Plaintiffs allege that they have been denied a fire grate for their outdoor area that would be used to ensure that a fire can be built even after a substantial rain. (ECF No. 1 ¶ 43.) Plaintiffs further allege that an alternative—using gravel to raise the area instead of a fire grate—was denied by the Spiritual Practices Advisory Committee at the Moose Lake facility. (*Id.* ¶ 44.) While it is certainly possible that fires are important to the practice of Asatru—although Plaintiffs do not so allege—Plaintiffs have not explained how a lack of fire grate or fire grate alternative substantially burdened their religious exercise. Lacking those allegations, the Complaint fails to state a claim related to the fire grate.

Plaintiffs make two additional allegations that Defendants do not address head-on. First, Plaintiffs allege that they have been denied "essential tools that are necessary to the religion for practice of rituals[.]" (*Id.* ¶ 35.) But, Plaintiffs have not pled sufficient facts to plausibly state a claim. Plaintiffs allege the conclusion that the items are essential, but do not plead any additional facts to show how the denial of the items substantially burdens their exercise of Asatru. Plaintiffs have not explained how these items are used or how their inability to use these items alters their religious practice. Thus, Plaintiffs claims should be dismissed. *See Webb v. California Dept. of Corr.*, Case No. 13cv1254

(BAM), 2014 WL 7337434, *1, 7-8 (E.D. Cal. Dec. 23, 2014) (dismissing RLUIPA claims for failure to state a facially plausible claim that denial of a hammer and sacred oils and herbs substantially burdened the practice of the plaintiffs Asatru faith); *Maier v. Pall*, Case No. 09cv1427, 2014 WL 1912194, *12-13 (M.D. Pa. May 13, 2014) (granting summary judgment for defendants where the plaintiff failed to demonstrate that the denial of a Thor's Hammer substantially burdened his practice of Odinism).

Second, Plaintiffs allege that more restrictions are placed upon them than are placed upon Asatru practitioners at the St. Peter facility. (ECF No. 1 ¶ 40.) Plaintiffs' allegations focus on use of outdoor spaces and food preparation space. (*Id.*) As discussed above, Plaintiffs have not shown how the restrictions they face substantially burden their religious exercise.

In sum, Plaintiffs failed to allege that the restrictions and policies they identify substantially burden their religious exercise. Therefore, Plaintiffs have failed to state a claim under RLUIPA. *See* 42 U.S.C. § 2000cc-1. Because substantial burden is similarly a required element of a free exercise claim under the First Amendment, Plaintiffs have failed to state a free exercise claim under Section 1983. *See Gladson v. Iowa Dep't. of Corrections*, 551 F.3d 825, 831 (8th Cir. 2009). The Court recommends that Plaintiffs' RLUIPA and Free Exercise claims be dismissed without prejudice.

### D. Due Process Claims

In addition to their RLUIPA claims and Section 1983 claims centering on free exercise rights, Plaintiffs also couch their claims on due process grounds.  For each count of their Complaint, Plaintiffs contend that "Fourteenth Amendment due process requires that the conditions and duration of confinement have some reasonable relation to the purposes for which persons are committed."   (ECF No. 1 ¶¶ 48, 55, 63, and 71.) Defendants contend that Plaintiffs' due process claims should be dismissed.  (ECF No. 18, at 19-23.)  Defendants are correct.

The Due Process Clause of the Fourteenth Amendment prohibits governments from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.  Courts recognize two components: procedural due process and substantive due process.  *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Procedural due process claims focus not on the merits of a deprivation but on whether a government circumscribed the deprivation with constitutionally adequate process. *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998).  Substantive due process bars certain government actions regardless of the fairness of the procedures used to implement them.  *Cty. of Sacramento*, 523 U.S. at 840.

In Counts I, II and III of the Complaint, Plaintiffs seek relief for what they view as unjustified burdens on their religious exercise.  (ECF No. 1 ¶¶ 48, 55, 63, and 71.)  The First Amendment provides protection for burdens on free exercise.  *See Gladson*, 551 F.3d at 832-33.  The United States Supreme Court has held that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a

particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cty. Of Sacramento*, 523 U.S. at 842.  In Counts I, II, and III, Plaintiffs do not challenge the fairness of the processes that allegedly burdened their religious exercise; rather they challenge the burdens themselves.  Because Plaintiffs focus on protections provided by the "explicit textual source" of the First Amendment, the First Amendment, rather than the "more generalized notion of substantive due process[,]" governs Counts I, II, and III. *Id.*  Thus, the analysis of Plaintiffs' free exercise claims above, *see* Section III.C, *supra*, fully addresses any substantive due process concerns raised by Plaintiffs.  *See Id.*

In Count IV, Plaintiffs raise a claim sounding more in procedural due process. Plaintiffs contend that they "do not have a reasonable grievance procedure to use when the MSOP makes unnecessary changes or false accusations" because the relevant decision-makers are all MSOP employees and appeals are heard by the MSOP facility director or a board that includes MSOP employees.  (ECF No. 1 ¶ 72.)  Plaintiffs further allege that the "grievance procedure" used at the MSOP "leaves Plaintiffs no reasonable way to challenge the disallowment" of use of space and various religious accommodations.  (*Id.* ¶¶ 73-74.)

To state a procedural due process claim, Plaintiffs must first "demonstrate the deprivation of a protected liberty or property interest."  *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009); *see also Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  Here, Plaintiffs have not demonstrated the deprivation of a protected liberty or property interest.  The only liberty or property interests discussed are Plaintiffs' free

exercise rights, which are protected by the First Amendment and RLUIPA.   But, as discussed above, Plaintiffs have not alleged facts sufficient to show that the policies and practices of which they complain substantially burdened Plaintiffs' religious exercise, which is required to state a claim.   Aside from free exercise rights, Plaintiffs have not identified any other source of liberty or property interest that protects them from the policies or practices Plaintiffs challenge.

Nor does the grievance procedure give rise to a substantive due process claim. While substantive due process "protects against government power arbitrarily and oppressively exercised[,]" it does not provide blanket protection against any governmental action; "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."   *Cty. of Sacramento*, 523 U.S. at 846 (internal quotations omitted).   Substantive due process is concerned with violations of personal rights so severe or motivated by malice that "it amounted to a brutal and inhuman abuse of official power literally shocking to the conscience."   *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002).   Here, the policies and practices challenged by Plaintiffs fall far short of conduct which shocks the conscience.   Accordingly, Plaintiffs fail to state a due process claim.[4]

---

[4] Defendants additionally move to dismiss any claim under the Minnesota constitution found in Counts II, III, and IV of the Complaint.  (ECF No. 18, at 27-29.)  If Plaintiffs seek to state a claim under the Minnesota constitution, such a claim should be dismissed. *See Riehm v. Engelking*, No. 06-293 (JRT/RLE), 2007 WL 37799, at *8 (D. Minn. Jan. 4, 2007) *aff'd by* 538 F.3d 952 (8th Cir. 2008) ("Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota constitution.").  As to official capacity claims, the Eleventh Amendment bars the Court from deciding whether the State complied with state law.  *See Pennhurst State School & Hosp. v. Halderman*,

### E.  Equal Protection Claim

In their response brief, Plaintiffs contend that their Fourteenth Amendment claims sound under the Equal Protection Clause, not the Due Process Clause.  Defendants correctly contend that Plaintiffs' Complaint does not claim violations of the Equal Protection Clause.  (ECF No. 25, at 7-8.)  The Complaint couches Plaintiffs' claims as violations of the Due Process Clause and do not mention the Equal Protection Clause. (*See* ECF No. 1 ¶¶ 45-78.)   Nevertheless, the Court will address Plaintiffs' Equal Protection argument.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination[.]"  *Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 U.S. 441, 445 (1923) (citation omitted).   This is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "Equal protection 'does not guarantee that all persons must be dealt with in an identical manner[.]'"  *Walker v. Hartford Life & Accident Ins. Co.*, 831 F.3d 968, 976 (8th Cir. 2016) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 500 (8th Cir. 2010)). To state an equal protection claim, a plaintiff must show an "element of intentional or

---

465 U.S. 89, 100-01, 104-06; *Minn. Pharmacists Ass'n v. Pawlenty*, 690 F. Supp. 2d 809, 815 (D. Minn. 2010).  As to individual capacity claims, "Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action."  *Riehm v. Engelking*, 538 F.3d 952, 969 (8th Cir. 2008).  Minnesota has not recognized any tort for the violation of due process rights. *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985).

purposeful discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (citing *Batra v. Bd. of Regents*, 79 F.3d 717, 721 (8th Cir.1996)).

Plaintiffs raise two potential sources of unequal treatment: (1) the Asatru group is allegedly denied its own space while other religious groups are allowed dedicated space; and (2) the Moose Lake Asatru group has more restrictions than the St. Peter group. (ECF No. 1 ¶¶ 32, 40.) Plaintiffs do not, however, allege that any differences in their treatment are the result of discriminatory intent. The fact of disparate treatment alone, without further context, is insufficient to state a claim under the Equal Protection Clause. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 372–73 (2001) ("Although disparate impact may be relevant evidence of racial discrimination . . . such evidence alone is insufficient even where the Fourteenth Amendment subjects state action to strict scrutiny."). As a result, Plaintiffs' equal protection claims should be dismissed.

### F. Claim-Splitting

Finally, Defendants argue that the Court should dismiss this case because allowing it to continue would allow improper claim-splitting. (ECF No. 18, at 25-27.) The Court has recommended that all of Plaintiffs' claims be dismissed for failure to plead sufficient facts to state a claim upon which relief may be granted. This conclusion necessarily renders analysis of Defendants' claim-splitting argument moot.

## IV.    RECOMMENDATION

Based upon the foregoing and all of the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss, (ECF No. 16), be **GRANTED**.

2.    Plaintiffs' Complaint, (ECF No. 1), be **DISMISSED**.


Dated: January 6, 2017                                     *s/ Tony N. Leung*
                                                     Tony N. Leung
                                                     United States Magistrate Judge
                                                     District of Minnesota

                                                     *Oman et al. v. Mesojedec et al.*
                                                     Case No. 16-cv-277 (JNE/TNL)

## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).


**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.